UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELO D. JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>REV. BROWN, *et al.*,<br><br>        Defendants. | No. 20-CV-3280 (KMK)<br><br>PARTIAL TRANSFER ORDER &<br>ORDER OF SERVICE |

KENNETH M. KARAS, United States District Judge:

  Plaintiff, currently incarcerated at Five Points Correctional Facility ("Five Points"), brings this pro se Action under the Court's Federal Question jurisdiction, alleging that Defendants violated his federal civil rights. By order dated May 14, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, in forma pauperis ("IFP").[1] Plaintiff sues 25 Defendants and asserts claims arising at Downstate Correctional Facility ("Downstate"), Great Meadow Correctional Facility ("Great Meadow"), and Five Points.

  For the reasons set forth below, the Court severs Plaintiff's claims arising at Great Meadow and Five Points, and transfers those claims to the United States District Court for the Northern District of New York. Plaintiff's claims arising at Downstate will remain in this Court, and the Court directs service on Downstate Defendants Reverend Brown and Kosseff-Salchert.

## BACKGROUND

  Plaintiff suffers from a number of medical conditions, including "chronic type 1 and 2 acute migraines," chronic sinus infections, high blood pressure, glaucoma, a corneal defect, rheumatoid arthritis, a severe tear in his shoulder, two pinched and severed nerves in his lower

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

neck and back, tears in his right meniscus, depression, post-traumatic stress disorder, personality disorder, hepatitis C, and seizures. (Compl. 11 (Dkt. No. 2).)[2] The following allegations are taken from the Complaint.

### A. Claims Arising at Downstate

Plaintiff asserts claims against nurse Kosseff-Salchert and Reverend Brown in connection with the events occurring at Downstate.

Around September 10, 2018, Plaintiff arrived at Downstate. Upon arrival, he informed Kosseff-Salchert, a licensed nurse practitioner, of his medical needs, including that his glaucoma and corneal defect require him to wear special contact lenses and that his previous optometrist determined that he urgently needed new lenses. Plaintiff alleges that despite being aware that Plaintiff urgently needed new lenses, Kosseff-Salchert ignored his sick call slips for weeks. He was forced to wear his outdated lenses that "created serious double vision" and made his migraines more frequent and more intense. (*Id.* at 13.)

Plaintiff practices the Rastafarian religion and is registered as a Rastafarian with prison officials. Reverend Brown is "in charge" and has the power to grant or deny an inmate permission to attend religious events. (*Id.* at 14.) Plaintiff had previously received permission from prison officials to attend the commemoration of Haile Selassie, a Rastafarian religious event held once a year. As Plaintiff and other Rastafarian inmates were waiting to be transported to the event, they were informed that Reverend Brown had revoked their permission to attend. Plaintiff alleges that Reverend Brown routinely treats Protestant inmates more favorably than inmates who practice other religions.

---

[2] Page numbers refer to those generated by the Court's electronic filing system ("ECF").

**B.     Claims Arising at Great Meadow**

Plaintiff asserts claims against the following Defendants in connection with events occurring at Great Meadow: Superintendent C. Miller, Deputy Superintendent McIntosh, Registered Nurse Rocque, Dr. Goe, Dr. Karandy, Sergeant Gilles, Correction Officer P. Boule, Correction Officer Rich, Correction Officer Papa, Licensed Nurse Practitioner Nesmith, Registered Nurse Christy, Assistant Deputy Superintendent for Mental Health M. Collins, Deputy Superintendent for Security M. Caron, Lieutenant G. Morpay, New York State Department of Corrections and Community Supervision ("DOCCS") Acting Deputy Commissioner and Chief Medical Officer Dr. John Morley, DOCCS Regional Health Services Administrator Mary Tandy-Walters, two John Does, and one Jane Doe,

On or about June 17, 2019, while in the recreation yard, Plaintiff became dizzy and passed out. When he regained consciousness, he was being taken to the medical department at Great Meadow. Gilles "aggressively question[ed]" Plaintiff and accused him of being high on K2, a synthetic form of marijuana. (*Id.* at 29.) While Plaintiff's hands and feet were in restraints, Nurse Nesmith put a "very harmful concoction on his gloved hands and viciously covered [Plaintiff's] nose" while applying pressure, giving Plaintiff the sensation that he "was going to die." (*Id.* at 29.) The substance that Nesmith placed on Plaintiff's mouth caused his lips to burn. Defendants then escorted Plaintiff to another room at the facility, where they removed his clothes and punched, kicked, and sexually assaulted him as he lay face-down on a mattress. Plaintiff further alleges that he was denied due process in the course of a disciplinary hearing arising from that incident.

On or about July 9, 2019, Plaintiff was placed in an extremely hot cell without ventilation, causing him to have a seizure. Plaintiff was taken to the medical department at Great Meadow, where Gilles ordered that the other officers hold Plaintiff's arms and legs down while

3

Nesmith again covered Plaintiff's mouth and nose with "that very very harmful concoction on his hands." (*Id.* at 39.) During this entire episode, Gilles repeatedly referred to Plaintiff, an African American man, as a "monkey." (*Id.* at 40-41.) Plaintiff alleges that the burns on his lips caused him severe pain for three days and left "nasty white blisters" on his lips, preventing him from eating or drinking. (*Id.* at 41.)

Plaintiff further alleges that he was kept in SHU "under inhuman living conditions" while Defendants Collins and Caron refused to grant him "time cuts" provided for in the "reform[ed] SHU laws pass[ed] in 2016." (*Id.* at 43.)

In a separate set of allegations, Plaintiff asserts that Rocque, Doe, Karandy, and Nesmith denied him medical treatment, including needed medications, for his various underlying conditions. (*See id.* at 16-19.) In yet another set of allegations, Plaintiff alleges that as he was packing his property before being transferred to Five Points, Cook told him that because of the complaints he filed against correction officers, he should not be surprised if his property does not make it to his next facility.

## C.     Claims Arising at Five Points

Plaintiff's claims arising at Five Points mainly appear to be continuations of alleged violations that began at Great Meadow. He asserts claims against a Jane Doe nurse, physician's assistant Perez, and Superintendent Tomas.

On or about January 21, 2020, Plaintiff arrived at Five Points. He asserts that he was placed in SHU at Five Points without due process as a result of disciplinary hearings that occurred at Great Meadow.

Plaintiff further alleges that his property, including his medications and contact lens supplies, was lost in transit after he left Great Meadow. Despite the loss of these items, upon Plaintiff's arrival at Five Points, a Jane Doe registered nurse denied him contact lens solution, a

4

case for his lenses, and his pain and glaucoma medications. Plaintiff was denied sick calls and further alleges that physician assistant Perez failed to treat his medical conditions.

## DISCUSSION

**A.   Severance of Claims Arising at Great Meadow and Five Points**

Rules 18 and 20 of the Federal Rules of Civil Procedure govern joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

Rule 20(a)(2) permits a plaintiff to join multiple defendants in one action if: (A) any right to relief is asserted against them jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions . . . ; and (B) any question of law or fact common to all defendants will arise in the action. Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic*, 673 F. Supp. 2d at 167.

Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever a claim, the court considers "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845,

5

2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)).  Put another way, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"  *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

       Joinder of the Downstate Defendants and the Great Meadow and Five Points Defendants does not comport with Rule 20(a).  Plaintiff's claims against Defendants at Downstate, which relate to his being denied new contact lenses and being prevented from attending a religious service, are not logically connected to his claims against Great Meadow and Five Points Defendants in connection with a series of assaults, denial of medical attention, retaliation, and denial of due process in subsequent disciplinary proceedings.  *See, e.g.*, *Webb v. Maldanado*, No. 3:13-CV-144, 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) ("Unrelated claims against different defendants belong in different suits . . . to prevent the sort of morass" created by a complaint with more than twenty defendants and countless unrelated claims.") (quotation and citation omitted); *Smith v. Goord*, No. 04-CV-6432, 2006 WL 2850597, at *3 (W.D.N.Y. Sep. 22, 2006) (disallowing joinder of claims against defendants at different correctional facilities where there was no suggestion that original defendants were involved in the actions taken against plaintiff in a different facility more than one year later).

       For these reasons, the Court concludes that it is appropriate to sever Plaintiff's claims arising at Great Meadow and Five Points from his claims arising at Downstate.  The Court therefore severs Plaintiff's claims arising at Great Meadow and Five Points, which are brought against Great Meadow Defendants Miller, McIntosh, Collins, Caron, Morpay, Gilles, Boule,

Rich, Papa, Goe, Karandy, Nesmith, Rocque, Christy, Morley, Tandy-Walters, Tomas, Perez, two John Doe correction officers and a Jane Doe correction officer, and one Five Points Defendant, a Jane Doe nurse.

## B.     Transfer of Claims Arising at Great Meadow and Five Points

When a court orders the severance of claims, it creates two or more separate "actions," and the court may transfer one separate action while retaining jurisdiction of another. *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

Under the general venue provision, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the district where the person is domiciled. 28 U.S.C. § 1391(c)(1).

The events giving rise to Plaintiff's claims arising at Great Meadow and Five Points primarily occurred at Great Meadow in Washington County, New York, which is the Northern District of New York. *See* 28 U.S.C. § 112(a). It is unclear from the complaint whether all defendants reside in New York or whether any defendant resides in this District. Venue for Plaintiff's claims arising at Great Meadow and Five Points therefore does not appear to be proper in this District under § 1391(b)(1) or (2).

Even if venue were proper here, however, the Court may transfer claims "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H.*

*Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Moreover, courts may transfer cases on their own initiative. *See Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426-427 (S.D.N.Y. 2013) ("Courts have an independent institutional concern to see to it that the burdens of litigation that is unrelated to the forum that a party chooses are not imposed unreasonably on jurors and judges who have enough to do in determining cases that are appropriately before them. The power of district courts to transfer cases under Section 1404(a) *sua sponte* therefore is well established." (quoting *Cento v. Pearl Arts & Craft Supply Inc.*, No. 03-CV-2424, 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003))); *see also Lead Indus. Ass'n. Inc. v. OSHA.*, 610 F.2d 70, 79 (2d Cir. 1979) (noting that "broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte*").

In determining whether transfer is appropriate, courts consider the following factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459-60 (S.D.N.Y. 2011); *see also N.Y. Marine & Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors). A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Under § 1404(a), transfer of the severed claims appears to be appropriate in this case. The events underlying the severed claims occurred primarily in Great Meadow, where most of

the defendants are employed. Great Meadow is located in Washington County, which falls within the Northern District of New York. *See* 28 U.S.C. § 112(a). Venue for the severed claims is therefore proper in the Northern District of New York. *See* 28 U.S.C. § 1391(b). Based on the totality of the circumstances, the Court concludes that it is in the interest of justice to transfer the severed claims to the United States District Court for the Northern District of New York.[3] 28 U.S.C. § 1404(a). Plaintiff's claims arising at Downstate will remain in this Court.

**D.      Order of Service**

Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals Service to effect service. *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP)). Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that the summons and complaint be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have served the summonses and Complaint until the Court reviewed the Complaint and ordered that summonses be issued. The Court therefore extends the time to serve until 90 days after the date the summonses are issued. If the Complaint is not served within that time, Plaintiff should request an extension of time for service. *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service); *see also Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) ("As long as the [plaintiff proceeding IFP] provides the information necessary to identify the defendant, the Marshals' failure to effect service

---

[3] Whether the claims arising at Five Points should be severed and transferred to the Western District of New York, the district in which Five Points is located, is a decision left to the transferee court.

automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m).").

To allow Plaintiff to effect service on Defendants Reverend Brown and Kosseff-Salchert through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for each of these Defendants. The Clerk of Court is further instructed to issue summonses and deliver to the Marshals Service all the paperwork necessary for the Marshals Service to effect service upon these defendants.

Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss the action if Plaintiff fails to do so.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff, together with an information package.

The Clerk of Court is further directed to sever the claims against Defendants Miller, McIntosh, Collins, Caron, Morpay, Gilles, Boule, Rich, Papa, Goe, Karandy, Nesmith, Rocque, Christy, Morley, Tandy-Walters, Tomas, Perez, two John Doe correction officers at Great Meadow, Jane Doe correction officer at Great Meadow, and Jane Doe nurse at Five Points, and transfer the action involving those defendants, under 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of New York.

The Clerk of Court is instructed to complete the USM-285 forms with the addresses for Reverend Brown and Kosseff-Salchert and deliver to the U.S. Marshals Service all documents necessary to effect service.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: June 3, 2020
       White Plains, New York

                                          KENNETH M. KARAS
                                          United States District Judge

## DEFENDANTS AND SERVICE ADDRESSES

1. Revered Brown
   Downstate Correctional Facility
   121 Red Schoolhouse Road
   P.O. Box 445
   Fishkill, NY 12524-0445

2. Nurse Kosseff-Salchert
   Downstate Correctional Facility
   121 Red Schoolhouse Road
   P.O. Box 445
   Fishkill, NY 12524-0445